# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

**Ben T. Castle, Esq. & Kenneth W. Richmond, Esq.** *pro hac*
P. O. Box 391
Wilmington, DE 19899
(302) 571-6618                     **Attorney for the Plaintiff**

NORWOOD WYATT,
        Plaintiff

    v.                                                        Civil Action No. 05-655-***(MPT)

First Correctional Medical, Inc.
6861 North Oracle
P. O. Box 69370
Tucson, Arizona 85737-0015
        Defendant
        and
Correctional Medical Services                              **JURY TRIAL DEMANDED**
12647 Olive Boulevard
St. Louis, MO 63141-9052
        Defendant
        and
Dr. Sitta Gombeh-Ali, MD
802 Ridge Court
Middletown, DE 19709
        Defendant
        and
Thomas Carroll, Warden
Delaware Correctional Center
1181 Paddock Road
Smyrna, DE 19977

        and
Commissioner Stanley Taylor
Delaware Department of Corrections
Administration Building
245 McKee Road
Dover, Delaware 19904
        Defendant
        and

Joyce Talley, Bureau Chief of
Management Services
Delaware Department of Corrections
245 McKee Road
Dover, Delaware 19904
                Defendant

## AMENDED COMPLAINT

### I. JURISDICTION

1. 28 U.S.C.S. 1331 Federal Question: This is a civil action brought pursuant to 42 U.S.C.S. 1983 alleging that each of the defendants named above, while acting under color of state law, in the manner described below, violated the decedent's right under U.S. Const. amend. VIII, to be free of the infliction of cruel and unusual punishment and deliberate indifference to a substantial risk of harm from denial of needed medical treatment.

### II THE PARTIES

2. The Plaintiff, Norwood Wyatt is currently residing at the above captioned address at the Delaware Correction Center having SBI number 167137, and has been in custody with the Delaware Department of Correction since July of 1999.

3. Defendant, First Correctional Medical, Inc of 6861 N. Oracle, Tucson, Arizona, 85737 is a Corporation whose approval was required but withheld for needed prescriptions, hospital specialist medical and surgical care that the Plaintiff suffered as a result of a bladder stone lodged in his urinary tract.

4. Defendant, Correctional Medical Services has been the private Medical Care Vendor to the Delaware Department of Correction since July of 2005 and withheld needed prescriptions, hospital specialist medical care that the Plaintiff suffered through September, 2005 while he was incarcerated at the Delaware Correctional Center.

5. Defendant Thomas Carroll is the Warden of the Delaware Correctional Center where the Plaintiff was and remains confined. On or about June 10, 2005, he received notice of the Plaintiff's medical complaints and a detailed history of the grievances and neglect of the Plaintiff's serious medical need. In spite of the notice, he failed to act and remained deliberately indifferent to the complaints.

6. Defendant Sitta Gombeh-Ali, MD was a physician licensed in Delaware who provided medical care and who oversaw the infirmary at Delaware Correctional Center where she knowingly withheld required medical care from the Plaintiff with deliberate indifference to a serious medical need during a period between October 29, 2004 and September 9, 2005.

7. Defendant Stanley Taylor is the Commissioner of Corrections for the State of Delaware who, on or about June 17, 2002, entered into an Agreement with First Correctional Medical-Delaware, LLC, the alter-ego for Defendant First Correctional Medical for the provision of comprehensive medical care for inmates incarcerated by the Delaware Department of Corrections.

8. Defendant Joyce Talley is the Bureau Chief for the Bureau of Management Services, Delaware Department of Corrections, who was specifically

charged with oversight of inmate health care services and the medical vendor contract compliance, including responsibility for detailed reviews of inmate medical grievances, during the events described below.

### III  THE BACKGROUND

9. First Correctional Medical, Inc., is an Arizona Corporation which is a vendor of medical services that had responded to a Delaware Department of Correction Request for Proposal that had been published and circulated among Medical Care Vendors some time between January 1, 2002 and May 1, 2002. The Defendant First Correctional Medical presented its proposal and its accreditation from the National Commission on Correctional Health Care when submitting its bid to the Delaware Department of Corrections to provide Medicare Care to Inmates.

10. On or about July 1, 2002, an alter ego or subsidiary corporation known as First Correctional Medical of Delaware, LLC commenced business as the actual vendor for the medical care being provided to the Delaware Department of Corrections, while the Defendant First Correctional Medical in Arizona retained control over hospital and specialty care referrals for the Plaintiff in February, 2005.

11. It is believed and therefore averred that at no time prior to July, 2005 did the Delaware, LLC receive independent accreditation from the National Commission on Correctional Healthcare, and at all times relevant the Defendants Taylor and Talley, who were ultimately responsible for the contract performance

of the medical vendor, relied upon the NCCHC accreditation of the parent company, First Correctional Medical, Inc., in Arizona.

12. First Correctional Medical, Inc. and its alter-ego, First Correctional Medical of Delaware, LLC provided medical care to approximately 6100 pre and post conviction inmates incarcerated in the Delaware Department of Corrections unified system.

13. First Correctional Medical was the successful bidder at $16,000,000.00 and accepted responsibility for the medical care of each incarcerated inmate commencing July 1, 2002.

14. The previous vendor, Defendant Correctional Medical Services, had given notice to Stanley Taylor that it would not renew its vendor contract due to an insufficiency of funds needed to provide required care. The annual contract amount for Correctional Medical Services actually exceeded the amount bid by Defendant First Correctional Medical in May, 2002.

15. Prior to July 23, 2003, it became known to Defendant Stanley Taylor that First Correctional Medical of Delaware, LLC was not paying outside medical vendors, including Kent General Hospital and others for services rendered to inmates.

16. During a regularly scheduled monthly Medical Review Committee meeting in July, 2003 Tammy Kastries made known that she had relied upon the availability of Medicaid to cover outside vendor costs and that she had attempted

to secure the cooperation of Stanley Taylor to intercede with Delaware Medicaid and that he was not cooperating.

17. At no time during the period of July 2003 through July 1, 2005 when the First Correctional Medical Contract was terminated, did the monthly Medical Review Committee investigate the quantity or contents of the large number of medical grievances in spite of knowledge that First Correctional Medical was unable to timely meet payments for hospital and specialty care and was therefore likely to withhold needed medical care from inmates.

18. At no time, despite this knowledge, did Defendants Taylor or Talley request or require an actual audit of the medical care provided by First Correctional Medical through the Fall of 2004, and the audit requested resulted from the complaints of outside medical vendors who were not being paid.

19. On or about July 1, 2005, Defendant Correctional Medical Services entered a no bid contract with the Delaware Department of Corrections, presumably after an audit was produced by the National Commission on Correctional Health Care which demonstrated constitutionally inadequate medical care and record keeping by First Correctional Medical Services.

20. It is believed and therefore averred that Defendant Sitteh Gombeh-Ali was retained by Correctional Medical Services for a period at least through August 15, 2005 and continued to be responsible for the medical care of the Plaintiff.

## VI. THE PLAINTIFF'S MEDICAL HISTORY

21.     On or about July 24, 2004, Plaintiff sought medical attention from First Correctional Medical for urinary difficulty and discomfort, and by August 13, 2004 had to be catheterized to relieve his bladder.

22.     On September 14, 2004, a radiologist reported a 2 cm bladder calculus and, on or about September 28, 2004, Dr. Trevedi, a First Correctional Medical subcontractor advised Defendant Sitteh Gombeh-Ali that Plaintiff required a urologist.

23.     Despite continuing pain, inability to evacuate his bladder and hematuria, the Plaintiff was not seen by the urologist, Dr. Donald Suh, MD until October, 29, 2004.  Dr. Suh recommended immediate surgery and specified twice daily catheterization.

24.     Thereafter, in spite of numerous grievances, a letter to Defendant Carroll, and direct contacts by the offices of Dr. Suh with Defendant Gombeh-Ali, and the staff of Correctional Medical Services, the Plaintiff's required surgical procedure was withheld until September 8, 2005.

25.     It is believed and therefore averred that the conduct of each of the Defendants with respect to the medical care required by the Plaintiff was the product of deliberate indifference to a serious medical need.

## FIRST COUNT

Plaintiffs v. Defendants Taylor, Talley and Carroll

42 U. S. C. 1983
U. S. CONSTITUTION amend. VIII

26. Each of the foregoing paragraphs are incorporated herein as though fully set forth and in addition, Plaintiffs allege that at all times relevant hereto, Defendants Taylor and Talley were under budgetary constraints which they knew or should have known were inadequate to meet the medical needs of the inmate population they were charged with overseeing.

27. It was known to Defendants Taylor and Talley that the profit of the medical vendor, First Correctional Medical and its alter ego or subsidiary, First Correctional of Delaware, LLC was inescapably dependent on restricting access to outside hospital and specialty care.

28. In addition to the foregoing, Defendants Taylor, Talley and Carroll, as the ultimate persons responsible for contract compliance for the medical vendor at the times relevant to this complaint, intentionally neglected to investigate the actual care delivered to inmates in general in spite of knowledge that the vendor had difficulty in securing payment for care from the DHSS Medicaid Administrators in Delaware which caused severe $ 800,000.00 arrearages in the payments to outside medical providers.

29. In addition to the foregoing, the Defendants Taylor and Talley intentionally, or with deliberate indifference (to a substantial risk of harm to the

inmates needing outside medical care in general) withheld needed cooperation from First Correctional Medical to obtain inmate eligibility for Medicaid, all while knowing that the medical vendor was unwilling or unable to pay for outside medical services.

30. At no time during the period between July 1, 2002 and July 2005 did Defendants Taylor, Talley or Carroll implement, order or undertake any investigation to determine the level or care being provided to inmates in general, or for the Plaintiff in particular, by monitoring medical grievances, by review or audit of specific items recommended by the NCCHC or by requiring any explanation for the inordinate number of inmate grievances and deaths as reported by the Federal Bureau of Prisons, except for ordering an audit by the National Commission on Correctional Health Care in late 2004 after discovering that outside vendor bills were going unpaid.

31. At no time during the tenure of First Correctional Medical did Defendants Taylor or Talley seek or even discuss medical budget increases from the Budget Director in the Office of the Governor, or from the legislature all while knowing that the vendor prior to First Correctional Medical could not deliver needed inmate medical care at budgeted amounts for 2001 and 2002 that were greater than those bid by First Correctional Medical.

32. As a result of the conscious, deliberate indifference to the serious medical needs of inmates as described, the Defendants, First Correctional Medical, Gombeh-Ali and Correctional Medical Services were enabled in the denial of urgently needed medical care in the present case which resulted in the Constitutionally forbidden pain and disability for the Plaintiff.

WHEREFORE, the Plaintiff respectfully demands judgment against the Defendants Taylor and Talley pain, suffering, and humiliation he experienced from the needed but withheld medical treatment together with punitive damages,costs and attorney fees as permitted.

## SECOND COUNT

Plaintiff v. First Correctional Medical, Correctional Medical
Services and Sitteh Gombeh-Ali, MD
42 U.S.C.§ 1983 amend VIII U.S. Constitution

29. Each of the foregoing allegations are incorporated herein as though fully set forth, and in addition it is alleged that Defendants First Correctional Medical, Correctional Medical Services, Sitta Gombeh-Ali acted or failed to act despite knowledge of a substantial risk of serious harm could actually befall the Plaintiff Norwood Wyatt as a direct result of withholding needed medical care

30. Each of the Defendants in this Count were directly responsible for the medical care and supervision of the DCC infirmary at the times indicated above and actually knew or clearly should have known that the decedent suffered from a

severe medical malady and required treatment and referral in time to prevent complications and pain.

WHEREFORE, the Plaintiff respectfully demands judgment against the Defendants Correctional Medical Services, First Correctional Medical, and Gombeh-Ali for pain, suffering, and humiliation he experienced from the needed but withheld medical treatment, together with punitive damages, costs and attorney fees as permitted.

### THIRD COUNT
PENDENT STATE CLAIMS
Plaintiff v. Sitteh Gombeh-Ali, MD & First Correctional
Medical and Correctional Medical Services, Inc.

31. Each of the foregoing allegations are incorporated herein as though fully set forth, and in addition thereto, Plaintiff alleges that the independent failures of Defendants Gombeh-Ali, First Correctional Medical and Correctional Medical Services to treat the Plaintiff's condition left him in excruciating pain and constitutes gross negligence and deliberate indifference to a serious medical need or, in the alternative, and falls well below the due standard of care.

WHEREFORE, Plaintiff respectfully prays for judgment against the Defendants Shah and Aramburo, Jr., jointly and severally for damages, and for punitive damages as a fact finder may determine, plus costs and attorney fees.

Respectfully submitted

/s/_____
Ben T. Castle, Esq
Kenneth William Richmond, *pro hac vice*
P. O. Box 391
Wilmington, DE 19899
215-840-3734 (cell for KWR)
215-523-9200 (office for KWR)